# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| MARIAN K. PARISE, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 08-4140-JAR |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATION

The Commissioner of Social Security denied plaintiff's application for disability insurance benefits and supplemental security income. Plaintiff sought review of the Administrative Law Judge's ("ALJ") decision and the Honorable Gerald B. Cohn issued a Report and Recommendation (Doc. 15) on September 4, 2009, recommending the Commissioner's decision be affirmed. This matter is currently before the Court on Plaintiff's Objection to the Recommendation and Report (Doc. 16). Defendant has not filed a response.

The standards the Court must employ when reviewing objections to a report and recommendation are clear.[1] Only those portions identified as objectionable will be reviewed.[2] The review of those identified portions is *de novo* and the Court must "consider relevant evidence of record and not merely review the magistrate judge's recommendation."[3]

Plaintiff states that her objection is "based on three points." Specifically she objects to

---

[1] *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72.

[2] *See Garcia v. City of Albuquerque*, 232 F.3d 760, 767 (10th Cir. 2000); *Gettings v. McKune*, 88 F. Supp. 2d 1205, 1211 (D. Kan. 2000).

[3] *See Griego v. Padilla*, 64 F.3d 580, 584 (10th Cir. 1995) (citation omitted).

those portions of the Report and Recommendation ("R & R") that uphold the ALJ's: evaluation of the medical evidence; credibility assessment; and determination that plaintiff's residual functional capacity ("RFC") did not prevent her from performing her past relevant work. The Court addresses each of these objections in turn.

*Medical Evidence*

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process, in finding that her low back pain and lower extremity problems were not severe impairments. In finding these impairments not severe, plaintiff asserts the ALJ improperly failed to explain why he discounted the findings by the State agency doctor that plaintiff had degenerative disc disease of the lumbro-sacral spine, as confirmed by an MRI, and that plaintiff had a medically determinable impairment.

On *de novo* review of the record, this Court finds that the ALJ correctly determined that plaintiff's low back pain and lower extremity problems were not severe impairments. The ALJ appropriately considered the medical evidence, as well as the evaluation done by the State agency physician, Dr. Cowles. First, although the ALJ did not mention Dr. Cowles by name, the ALJ specifically found that "the residual functional capacity assessment is supported by the State agency medical consultant assessment (Exhibit B8F)," which is the medical assessment of Dr. Cowles. And, many of the ALJ's medical findings were obviously adopted from, or based upon Dr. Cowles's findings. For example, the ALJ found, consistent with Dr. Cowles's assessment, that while plaintiff's MRIs showed degenerative changes, they showed no disc herniation or spinal stenosis, and that plaintiff had received relatively little treatment for her back problems, was not taking prescription medications and had no abnormal neurologic findings. Plaintiff

quotes from page 192 of the record, which is merely a note from an examiner to Dr. Cowles asking whether a sedentary RFC should be considered, but also positing that "perhaps light (rfc) is ok," based on "antalgic gait," and MRI. This note that plaintiff quotes is not a medical opinion, but is merely a question posed to the physician. The opinion of Dr. Cowles is found at page 190 of the record and states in pertinent part,

> An examination, done on 11/5/05 showed extreme obesity (BMI = 42), a reduced lumbar range of motion, normal neurologic findings, and mild-to-severe difficulty with orthopedic maneuvers.
>
> Analysis
>
> The medically-determinable impairment seen on both of Ms. Parise's MRIs is insufficient to account for her claimed impairments. Because she has required relatively little treatments in the past six months, takes only Tylenol for pain, and has normal neurologic findings, I conclude that she is capable of light work, as described on the previous assessment.

Moreover, with respect to plaintiff's low back pain and lower extremity problems, the ALJ catalogued the medical evidence in the record; and this Court's review of the record confirms the accuracy and completeness of the ALJ's account of the pertinent medical evidence. In 2003, an MRI showed that plaintiff had degenerative disc disease of the lumbar spine at the L4-5 and L5-S1 levels.[4] In 2005, an MRI of her lumbar spine revealed only "mild degenerative changes involving the disc at the T12/L1 level and the L4/L5 level" and no herniated disc and no spinal stenosis.[5] In 2006, another MRI showed a "minor degree of decreased signal intensity from the intervertebral disc material" but no other changes in the degenerative disc disease.[6]

---

[4](R. at 141.)

[5](R. at 162–63.)

[6](R. at 141.)

In a disability evaluation performed by Dr. Komes in 2004, he noted that "there are no significant abnormalities . . . that will prohibit sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, or traveling."[7] In two examinations in June and July of 2005, physicians noted "L4-L5 disk protrusion"[8] and "left lower extremity neuropathy."[9] And in a disability examination done in November 2005, Dr. Lewis found, in pertinent part, that plaintiff: did not make use of any prescription pain medications; had a diminished range of motion of the lumbar spine without a paraspinous muscle spasm; had a mildly impaired gait; used a cane that was not medically required; had moderate to severe difficulty with orthopedic maneuvers; and had no motor or sensory deficits but had some muscle wasting to her lower right extremity.[10]

In other numerous physical examinations in 2005–2006, when plaintiff presented with complaints of low back pain, as well as with various other medical complaints, physicians consistently noted no neurological deficits, and that her motor and sensory were grossly intact in her upper and lower extremities bilaterally.[11] Interestingly, on March 27, 2007, Dr. Hammad, a cardiologist, noted "[o]n a brief neurological examination, she is alert and oriented. She is moving all of her limbs equally. Power is 4-5/5 on both sides. Her station and gait are impaired on account of significant joint and back discomfort. She walks with the help of a cane. She

---

[7](R. at 160.)

[8](R. at 170.)

[9](R. at 171.)

[10](R. at 181.)

[11](R. at 145, 168–70, 260–64, 280–84.)

needed assistance in making the transfer from the chair to the examination table."[12] Yet, when Dr. Hammad saw plaintiff again on April 20, 2007, he noted "[o]n brief neurological exam, she is alert and oriented. She is moving all of her limbs equally. Power is 5/5 on both sides. Station and gait are normal."[13] The weight of the medical evidence supports the ALJ's conclusion that the low back pain and lower extremity problems were not severe impairments.

But, as Judge Cohn's thorough opinion explains, even if the ALJ erred in finding that the low back pain and lower extremity problems were not severe, the error is not reversible. At step two, the ALJ found that plaintiff had two severe impairments, obesity and hypertension. Having found at least one severe impairment at this step, so long as the ALJ then considered the combined effect of all of plaintiff's impairments, severe and non severe at the later steps, in determining her RFC, he did not commit reversible error. This is law in the Tenth Circuit.[14]

Here the ALJ considered plaintiff's low back pain and lower extremity problems, along with her severe impairments in assessing her RFC, so any error is not reversible. The ALJ expressly considered plaintiff's severe impairments, obesity and hypertension. And, the ALJ expressly considered these severe impairments in combination with plaintiff's non severe impairments and complaints: non-insulin dependent diabetes mellitus; chronic joint and back

---

[12](R. at 296.)

[13](R. at 293.)

[14]*See Brescia v. Astrue*, 287 F.. App'x 626, 628-629 (10th Cir. 2008)(explaining that once an ALJ has found that a claimant has at least one severe impairment, an ALJ's failure to find another impairment severe at step two does not constitute reversible error if at later steps the ALJ considers the combined effect of all the claimant's impairments, without regard to whether any such impairment alone would be of sufficient severity); *Hill v. Astrue*, 289 F. App'x 289, 291-92 (10th Cir. 2008) (holding failure to find that additional alleged impairments are also severe is not reversible error so long as the ALJ, in determining plaintiff's RFC, considers the effects of all of the claimant's medically determinable impairments, both those the ALJ has determined to be severe and those he has determined to be not severe).

5

discomfort; spina bifida occulta; chronic bilateral intermittent ankle swelling and left foot pain; deep vein thrombosis; back pain, leg pain, chest pain, arm pain; numbness in the legs and arms; disabling fatigue and weakness; and memory difficulties.

*Credibility Determination*

Plaintiff argues that the ALJ insufficiently explained his determination that her subjective complaints were not credible and in so doing improperly and substantially relied upon her minimal daily activities as evidence that she does not suffer disabling pain. But the ALJ properly acknowledged that the evidence showed that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. Then, the ALJ properly considered plaintiff's statements about the "intensity, persistence, or functionally limiting effects of pain or other symptoms" and that if these statements are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. This the ALJ did.

The ALJ first turned to the objective medical evidence and found that it largely did not support plaintiff's statements concerning the intensity, persistence or functionally limiting effects of her low back pain and lower extremity problems. Indeed, Dr. Cowles's assessment addressed how the objective medical evidence failed to support plaintiff's complaints:

> An examination, done on 11/5/05 showed extreme obesity (BMI = 42), a reduced lumbar range of motion, normal neurologic findings, and mild-to-severe difficulty with orthopedic maneuvers.
>
> Analysis
>
> The medically-determinable impairment seen on both of Ms. Parise's MRIs is insufficient to account for her claimed impairments. Because she has required relatively little treatments in the past six months, takes only Tylenol for pain, and has normal neurologic findings, I conclude that she is capable of light work, as

6

> described on the previous assessment. As long as she follows treatment recommendations, her diabetes will be non-severe. There is no medically-determinable impairment to account for her claimed difficulty reaching, hearing or seeing. Her condition appears to be quite stable.
>
> Because evidence in the file (noted above) contradicts Ms. Parise's claim, her claim is considered partially credible.

The ALJ pointed to other evidence in the record that refuted plaintiff's credibility. For example, plaintiff had not been wearing her TED hose that had been prescribed for treatment of her deep vein thrombosis. Despite her ongoing complaints of low back pain, she had never been prescribed medication, had never been given physical therapy, epidural injections, chiropractic treatments, nor any other treatment other than over-the-counter analgesics. Although she used a cane at times, one physician noted that her use of the cane was not a medical necessity. And, although plaintiff complained of disabling fatigue and weakness, neurologic examinations consistently showed no loss of strength, normal motor and sensory functions and almost always showed normal station and gait.

While there was evidence of degenerative disc disease and some mild change over the years, there was no evidence of muscle spasm, nor spinal stenosis, nor disc herniation. Moreover, as Magistrate Judge Cohn pointed out, the ALJ erred in finding no evidence of muscle atrophy because there was evidence of muscle wasting in plaintiff's right lower extremity, but this muscle wasting was taken into properly taken into account in Dr. Cowles RFC assessment. Further, the ALJ noted that there was no evidence of complaints of sleep deprivation, weight loss, nor any opinions from treating physicians that plaintiff was disabled. Finally, because plaintiff chose to not appear at a scheduled consultative examination, the ALJ noted that plaintiff waived the opportunity to produce objective evidence in support of her

7

subjective complaints. In short, the ALJ considered the objective medical evidence in a complete and thorough fashion, and clearly examined the record as a whole. The Court is satisfied that the ALJ's credibility analysis was closely and affirmatively linked to substantial evidence in the record, consistent with the law in this circuit.[15]

*Past Relevant Work*

Plaintiff objects that the ALJ erred in finding that she could return to her past relevant work because the ALJ failed to make specific findings regarding the demands of that work, and relied solely upon the testimony of the vocational expert who provided no such information about the physical or mental demands of the work, other than to say that the work was sedentary and semiskilled. The ALJ merely concluded that plaintiff could perform "light work," but did not determine whether she could work full time, and did not provide the requisite explanation or discussion of the effects of her symptoms and limitations on her work.

The Court finds that the ALJ made the requisite findings required at step four of the sequential evaluation. He found that plaintiff's RFC limited plaintiff to providing light work, a term that is defined in 20 C.F.R. § 404.1567(b) as work that "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls," and "lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds." Plaintiff had no other limitations in her RFC. The ALJ found that the RFC was supported by the assessment of Dr. Cowles, who found that plaintiff could: occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; sit, stand and/or walk 6 hours in an 8-hour workday; and push and/or pull for an unlimited time. And, although

---

[15]*See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

the ALJ did not address the medical evidence in the step 4 section of his report, he need not reiterate the extensive discussion of that medical evidence in steps two and three as it pertains to the RFC assessment. There was no medical evidence contradicting the ALJ's RFC findings nor supporting limitations beyond the RFC findings. Thus, this Court concludes that the ALJ complied with the requirements of SSR 96-8p and the case law in citing to the record evidence to justify his RFC findings.

Plaintiff's past relevant work was as a production worker. The vocational expert testified that a person limited to light work could perform this work; and the Department of Transportation ("DOT") indicates that a person classified as a production assembler must be able to perform light work. Thus, the ALJ's determination that plaintiff could perform her past relevant work was properly based on the medical evidence provided by Dr. Cowles, the ALJ's RFC assessment, the testimony of the vocational expert, as well as the DOT information about the job requirements for production assemblers.

The Court has conducted a *de novo* review, considering the relevant evidence of record, and agrees with the Magistrate Judge's finding that the ALJ's determinations should be affirmed. Plaintiff's objections are denied and the Court accepts the September 4, 2009 Report and Recommendation and adopts it as its own.

**IT IS THEREFORE ORDERED** that Plaintiff's Objection to the Recommendation and Report (Doc. 16) is **overruled and denied.**

**IT IS FURTHER ORDERED** that the September 4, 2009 Report and Recommendation (Doc. 15 ) shall be adopted by the Court as its own.

**IT IS SO ORDERED.**

Dated: November 10, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE